No. 23-10228

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

U.S. SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff/Appellee*,

v.

LISA MCELHONE AND JOSEPH W. LAFORTE,
*Defendants/Appellants*,

adv.

RYAN K. STUMPHAUZER, AS COURT-APPOINTED RECEIVER,
*Appellee*.

---

Appeal from the U.S. District Court
for the Southern District of Florida
Hon. Rodolfo A. Ruiz II
No. 9:20-cv-81205-RAR

---

**ANSWER BRIEF
OF APPELLEE RYAN K. STUMPHAUZER,
THE COURT-APPOINTED RECEIVER**

---

Timothy A. Kolaya
Amy M. Bowers
Stumphauzer Kolaya Nadler & Sloman, PLLC
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Telephone: (305) 614-1400

*Counsel for Appellee Ryan K. Stumphauzer,
the Court-Appointed Receiver*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Appellee Ryan K. Stumphauzer, as Court-Appointed Receiver for Complete Business Solutions Group, Inc. d/b/a Par Funding and the other "Receivership Entities,"[1] hereby certifies that the following is a complete list of the trial judge, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of

---

[1] The "Receivership Entities" are: (1) 118 Olive PA LLC; (2) 1250 N. 25th St. LLC; (3) 135–137 N. 3rd St. LLC; (4) 1427 Melon St. LLC; (5) 1530 Christian St. LLC; (6) 1635 East Passyunk LLC; (7) 1932 Spruce St. LLC; (8) 20 N. 3rd St. Ltd.; (9) 205 B Arch St. Management LLC; (10) 223 N. 25th St. LLC; (11) 242 S. 21st St. LLC; (12) 300 Market St. LLC; (13) 4633 Walnut St. LLC; (14) 500 Fairmount Ave., LLC; (15) 627–629 E. Girard LLC; (16) 715 Sansom St. LLC; (17) 803 S. 4th St. LLC; (18) 861 N. 3rd St. LLC; (19) 915–917 S. 11th LLC; (20) A BetterFinancialPlan.com LLC (d/b/a A Better Financial Plan); (21) ABFP Income Fund 2 Parallel; (22) ABFP Income Fund 2, L.P.; (23) ABFP Income Fund 3 Parallel; (24) ABFP Income Fund 3, LLC; (25) ABFP Income Fund 4 Parallel; (26) ABFP Income Fund 4, LLC; (27) ABFP Income Fund 6 Parallel; (28) ABFP Income Fund 6, LLC; (29) ABFP Income Fund Parallel LLC; (30) ABFP Income Fund, LLC; (31) ABFP Management Co., LLC; (32) ABFP Multi-Strategy Investment Fund 2 LP; (33) ABFP Multi-Strategy Investment Fund LP; (34) Beta Abigail, LLC; (35) Blue Valley Holdings, LLC; (36) Capital Source 2000, Inc.; (37) Complete Business Solutions Group, Inc. d/b/a Par Funding; (38) Contract Financing Solutions, Inc.; (39) Eagle Six Consultants, Inc.; (40) Fast Advance Funding LLC; (41) Fidelis Financial Planning LLC; (42) Full Spectrum Processing, Inc.; (43) Heritage Business Consulting, Inc.; (44) Liberty 8th Ave. LLC; (45) LM Property Management LLC; (46) LWP North LLC; (47) MK Corporate Debt Investment Co. LLC; (48) New Field Ventures, LLC; (49) RE Income Fund 2 LLC; (50) RE Income Fund LLC; (51) Recruiting & Marketing Resources, Inc.; (52) Retirement Evolution Group, LLC; (53) Stone Harbor Processing LLC; (54) The LME 2017 Family Trust; and (55) United Fidelis Group Corp.

the particular case on appeal (including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock); and other identifiable legal entities related to a party:

1.    Alfano, Gaetan J., counsel for Appellee Ryan K. Stumphauzer, as Court-Appointed Receiver for Complete Business Solutions Group, Inc. d/b/a Par Funding and the Receivership Entities (hereafter, "Receiver");

2.    Augustini, Hope Hall, counsel for Appellee U.S. Securities and Exchange Commission (hereafter, "SEC");

3.    Barbero, Megan, counsel for Appellee SEC;

4.    Berlin, Amie, counsel for Appellee SEC;

5.    Bowers, Amy M., counsel for Appellee Receiver;

6.    Bowers, John J., counsel for Appellee SEC;

7.    Bradylyons, Morgan, counsel for Appellee SEC;

8.    Conley, Michael A., counsel for Appellee SEC;

9.    Ferguson, David, counsel for Appellant Joseph LaForte;

10.    Froccaro Jr, James, former counsel for Appellant Joseph LaForte;

11.    Hardin, Tracey A., counsel for Appellee SEC;

12.    Haimovitch, Seth D., counsel for Appellant Joseph LaForte;

13.    Hardin, Tracey A., counsel for Appellee SEC;

14.    Healey, Martin F., counsel for Appellee SEC;

15.    Johnson, Alise Meredith, counsel for Appellee SEC;

16.    Kaplan, James M., counsel for Appellants Lisa McElhone and L.M.E. 2017 Family Trust;

17.    Kaplan Zeena LLP, counsel for Appellants Lisa McElhone and L.M.E. 2017 Family Trust;

18.    Kelley, Shannon, paralegal specialist for Appellee SEC;

19.    Kolaya, Timothy A., counsel for Appellee Receiver;

20.    Kopelowitz Ostrow Ferguson Weiselberg Gilbert, counsel for Appellant Joseph LaForte;

21.    L.M.E. 2017 Family Trust, a Receivership Entity;

22.    LaForte, Joseph, Appellant;

23.    Law Offices of Alan S. Futerfas, counsel for Appellant Lisa McElhone;

24.    McElhone, Lisa, Appellant;

25.    Pietragallo Gordon Alfano Bosick & Raspanti, LLP, counsel for Appellee Receiver;

26.    Reinhart, Bruce, Magistrate Judge – U.S. District Court for the Southern District of Florida;

27.    Ruiz, Rodolfo A., District Court Judge – U.S. District Court for the Southern District of Florida;

28.    Salup-Schmidt, Linda, counsel for Appellee SEC;

29.     Snyder, Noah E., Counsel for Appellants Lisa McElhone;

30.     Stumphauzer Kolaya Nadler & Sloman, PLLC, counsel for Appellee

Receiver;

31.     Stumphauzer, Ryan K., Appellee Receiver; and

32.     U.S. Securities and Exchange Commission, Appellee;

33.     Wagner, Brooke, counsel for Appellee SEC.

In accordance with Eleventh Circuit Rule 26.1-3(b), Appellee Receiver certifies that no publicly traded company or corporation has an interest in the outcome of this appeal. This Certificate of Interested Persons does not include all persons or entities who may be claimants in the receivership proceeding.

Dated: September 12, 2023                Respectfully submitted,

**STUMPHAUZER KOLAYA
NADLER & SLOMAN, PLLC**
2 South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Tel.: (305) 614-1400
Fax: (305) 614-1425

By: */s/ Timothy A. Kolaya*
Timothy A. Kolaya (Fla. Bar No. 056140)
Amy M. Bowers (Fla. Bar No. 105755)
Email: tkolaya@sknlaw.com
         abowers@sknlaw.com

*Counsel for Appellee Ryan K.
Stumphauzer, Court-Appointed Receiver*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Ryan K. Stumphauzer, as Court-Appointed Receiver for Complete Business Solutions Group, Inc. d/b/a Par Funding and the other Receivership Entities, does not request oral argument. The issues are adequately addressed by the record, the parties' briefs, and the authorities discussed therein; as such, the Court would not be significantly aided by the presentation of oral argument.

## Table of Contents

**STATEMENT REGARDING ORAL ARGUMENT** ............................................. i

**TABLE OF AUTHORITIES** ................................................................... iii

**QUESTIONS PRESENTED** ....................................................................1

**COUNTERSTATEMENT OF JURISDICTION** ................2

**STATEMENT OF THE CASE** ...............................................4

    **A.**   **Procedural History** ..............................................4

    **B.**   **Statement of Facts** .............................................11

**STANDARDS OF REVIEW** ...............................................12

**SUMMARY OF THE ARGUMENT** ...................................13

**ARGUMENT** .................................................................15

    A.   LaForte and McElhone waived any right to appeal the Receivership-Expansion Order.........................................15

    B.   The district court did not deprive LaForte and McElhone of due process by entering the Receivership-Expansion Order. ...........................................18

**CONCLUSION** ...............................................................33

**CERTIFICATE OF COMPLIANCE** .................................34

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Can. Life Assur. Co. v. LaPeter*
  563 F.3d 837 (9th Cir. 2009) ................................................................24

*CFTC v. Fingerhut*
  No. 1:20-cv-21887, 2020 WL 2747448 (S.D. Fla. May 26, 2020) ......................18

*CFTC v. S. Tr. Metals, Inc.*
  391 F. Supp. 3d 1167 (S.D. Fla. 2019) ................................................27

*Clark v. Hous. Auth. of City of Alma*
  971 F.2d 723 (11th Cir. 1992) ............................................................17

*Cohen v. Beneficial Indus. Loan Corp.*
  337 U.S. 541 (1949) .........................................................................17

*Cunningham v. Brown*
  265 U.S. 1 (1924) ............................................................................28

*Deluca v. Ceres Terminals Inc.*
  No. 14-cv-24706, 2016 WL 7626197 (S.D. Fla. June 3, 2016) ..........................29

*Dorse v. Armstrong World Indus., Inc.*
  798 F.2d 1372 (11th Cir. 1986) ..........................................................17

*First Fed. Sav. Bank & Tr. v. Ryan*
  927 F.2d 1345 (6th Cir. 1991) ................................................ 19, 20, 21

*Fuentes v. Shevin*
  407 U.S. 67 (1972) ............................................................... 20, 21

*Gennusa v. Canova*
  748 F.3d 1103 (11th Cir. 2014) ..........................................................26

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*
  572 U.S. 559 (2014) .........................................................................13

*Hofmann v. De Marchena Kaluche & Asociados*
  657 F.3d 1184 (11th Cir. 2011) ..........................................................16

*In re Lee*
  574 B.R. 286 (Bankr. M.D. Fla. 2017) .................................................27

*In re Pan Am. World Airways, Inc.*
  905 F.2d 1457 (11th Cir. 1990) ..........................................................26

*Morrissey v. Brewer*
  408 U.S. 471 (1972)..............................................................................20

*Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*
  153 F.3d 1289 (11th Cir. 1998)...........................................................13

*NLRB v. Gaylord Chem. Co., LLC*
  824 F.3d 1318 (11th Cir. 2016)...........................................................26

*Rensel v. Centra Tech, Inc.*
  2 F.4th 1359 (11th Cir. 2021)..............................................................17

*Santibanez v. Wier McMahon & Co.*
  105 F.3d 234 (5th Cir. 1997).........................................................18, 19

*SEC v. Byers*
  637 F. Supp. 2d 166 (S.D.N.Y. 1998).................................................28

*SEC v. Complete Bus. Sols. Grp., Inc.*
  44 F.4th 1326 (11th Cir. 2022)....................................................3, 9, 10

*SEC v. Complete Bus. Sols. Grp., Inc.*
  No. 22-13811, 2023 WL 4196949 (11th Cir. June 27, 2023) .......... 16, 17

*SEC v. Drucker*
  318 F. Supp. 2d 1205 (N.D. Ga. 2004)...............................................28

*SEC v. Elliot*
  953 F.2d 1560 (11th Cir. 1992)....................................... 20, 22, 25, 28

*SEC v. First Fin. Grp. of Tex.*
  645 F.2d 429 (5th Cir. 1981)...............................................................21

*SEC v. Keller Corp.*
  323 F.2d 397 (7th Cir. 1963)...............................................................21

*SEC v. Monterosso*
  756 F.3d 1326 (11th Cir. 2014)...........................................................28

*SEC v. Mut. Benefits Corp.*
  810 F. App'x 770 (11th Cir. 2020)......................................................13

*SEC v. Quest Energy Mgmt. Grp., Inc.*
  768 F.3d 1106 (11th Cir. 2014) .............................................................3

*SEC v. Quiros*
  966 F.3d 1195 (11th Cir. 2020) ..........................................................25

*SEC v. Torchia*
  922 F.3d 1307 (11th Cir. 2019) ..........................................................20

*SEC v. Wealth Mgmt. LLC*
   628 F.3d 323 (7th Cir. 2010).......................................................................... 12, 13

*Shores v. Sklar*
   885 F.2d 760 (11th Cir. 1989)..............................................................................17

*United States v. Bartle*
   159 F. App'x 723 (7th Cir. 2005).........................................................................32

*United States v. Beaver*
   252 F.2d 486 (3d Cir. 1958).................................................................................19

*United States v. Stonehill*
   83 F.3d 1156 (9th Cir. 1996)................................................................................13

*White v. C.I.R.*
   776 F.2d 976 (11th Cir. 1985)..............................................................................17

*Woods v. Fed. Home Loan Bank Bd.*
   826 F.2d 1400 (5th Cir. 1987)....................................................................... 20, 22

<u>Statutes</u>

28 U.S.C. § 1291..................................................................................................9

28 U.S.C. § 1292..................................................................................................9

28 U.S.C. § 1331..................................................................................................2

<u>Rules</u>

S.D. Fla. L.R. 26.1 .............................................................................................29

## QUESTIONS PRESENTED[2]

1.    Whether appellants waived the right to appeal an order expanding a receivership over additional entities and properties the appellants owned, which the district court entered before the appellants consented to a judgment against them as to liability and voluntarily waived the right to appeal from all interlocutory orders that merged into the consent judgment.

2.    Whether the district court afforded appellants sufficient due process when it expanded a receivership to include additional entities and properties the appellants owned after: (i) the parties fully briefed the issue; (ii) appellants consented to be enjoined from dissipating, concealing, or transferring assets that later could be the subject of disgorgement, and the district court determined such injunctions were supported by good cause; (iii) the receiver established through evidence that these additional entities received over $100 million in funds that could be the subject of disgorgement; (iv) appellants did not address—let alone refute—the receiver's evidence in opposing the motion to expand the receivership; (v) and the district court addressed the parties' briefing on the motion to expand at a status conference prior to ruling on the motion.

---

[2] In their opening briefs, McElhone and LaForte identified two additional questions on appeal (identified as their second and third questions presented) that do not directly involve the Receiver. (*See* ECF Nos. 36 & 37 at 1). The Receiver is not responding to, and defers to the SEC's positions on, those questions.

## COUNTERSTATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1331, the district court had subject matter jurisdiction over the civil enforcement action that Plaintiff/Appellee U.S. Securities and Exchange Commission (hereafter, "Commission" or "SEC") brought against Defendants/Appellants Joseph LaForte and Lisa McElhone, among others, for violations of federal securities laws. (*See* ECF No. 1 ¶ 37).[3] In their respective consent judgments, LaForte and McElhone stipulated as to liability, agreed that the district court shall retain jurisdiction to determine the amount of disgorgement and penalties to be awarded, and waived the right to appeal. (ECF Nos. 1008, 1010 (citing consents (ECF Nos. 1002-2, 1004-1))).

After briefing and an evidentiary hearing on the amount to be disgorged from LaForte and McElhone, and the amounts of civil penalties and prejudgment interest to be assessed against them, the district court entered the Amended Final Judgment (hereafter, the "Final Judgment" (ECF No. 1451)), which is consistent with the previously entered consents agreed to by LaForte and McElhone. (*Compare* ECF No. 1451 *with* ECF Nos. 1002-2 and 1004-1). Although LaForte and McElhone voluntarily consented to waive any right to appeal by agreeing to the entry of the consent judgments (ECF Nos. 1002-2 at 4, 1004-1 at 4), they appealed the Final

---

[3] "ECF No." is a reference to the district court electronic case filing numbers for documents referenced herein.  All such documents appear in the Appellant's Appendix or the Receiver's Supplemental Appendix.

Judgment and "all orders that merge into" it, specifically including the district court's Order Granting the Receiver's Motion to Expand the Receivership Estate (hereafter, the "Receivership-Expansion Order" (ECF No. 1492)).

Initially, McElhone attempted to appeal on behalf of an entity she previously owned, L.M.E. 2017 Family Trust, which is one of the Receivership Entities. (*Id.*). However, after considering the parties' briefing (Doc. 22–24)[4] on the Court's jurisdictional questions (Doc. 21), the Court dismissed L.M.E. 2017 Family Trust from the appeal for lack of standing. (*See* Doc. 27 at 2 (citing *SEC v. Quest Energy Mgmt. Grp., Inc*., 768 F.3d 1106, 1108–09 (11th Cir. 2014) (holding that a company's former officers lacked standing to appeal on behalf of the company because a receivership order forbade the officers from taking any action on the company's behalf and vested the company's legal rights and interests in the receiver))).

The Court decided that "[t]he remaining issue of whether the [Receivership-Expansion Order] is appealable[5] is carried with the case. A final determination regarding that jurisdictional issue will be made by the panel to whom this case is submitted after briefing on the merits is completed."[6] (Doc. 27 at 2 (emphasis

---

[4] "Doc." is a reference to the document numbers for the electronic case filings before this Court.

[5] In a prior appeal, the Court determined that the Receivership-Expansion Order was non-final and, thus, not appealable on an interlocutory basis. *See SEC v. Complete Bus. Sols. Grp., Inc.*, 44 F.4th 1326, 1332–34 (11th Cir. 2022).

[6] The Court previously advised that the parties are permitted—but not required—"to

removed)). The Receiver does not dispute that the Receivership-Expansion Order is appealable for the reasons set forth in the Receiver's response to the Court's jurisdictional questions, which the Receiver incorporates herein. (*See* Doc. 23 at 6–8, § 1(b)).

## STATEMENT OF THE CASE

### A.    Procedural History

In July 2020, the SEC brought this civil enforcement action against LaForte, McElhone, and others for violating federal securities laws. (ECF No. 1 ¶ 1). The SEC alleged that LaForte and McElhone committed these violations through a company they controlled, Complete Business Solutions Group, Inc. d/b/a Par Funding (hereafter, "CBSG" or "Par Funding"). (ECF No. 119 at 1-11). The SEC sought a temporary restraining order, preliminary and permanent injunctions, an asset freeze, appointment of a receiver, disgorgement, and civil penalties. (*Id*. at 55-57).

### *Initial Appointment of the Receiver and Issuance of the Restraining Order*

On the first business day after the SEC filed this sealed action, the district court appointed Ryan K. Stumphauzer (the "Receiver") to serve as the receiver for Par Funding and several other companies (ECF No. 36). The Receiver was charged

---

discuss th[at] jurisdictional issue" in their respective briefs on the merits, "as they deem necessary or appropriate." (Doc. 27 at 2).

with "marshaling and preserving all assets of the Defendants" that could be "attributable to funds derived from investors of clients of the Defendants." (*Id*.). Approximately three weeks later, the district court expanded the Receiver's duties through the entry of an Amended Order Appointing Receiver. (ECF No. 141). LaForte and McElhone never appealed or otherwise attempted to challenge the district court's initial order appointing the Receiver or the subsequent order expanding the Receiver's duties.

In the days following the filing of this action, the district court also granted the SEC's Emergency *Ex Parte* Motion for Temporary Restraining Order, finding that the SEC presented a prima facie case that LaForte, McElhone, and Par Funding, among others, had violated securities laws and would continue to do so unless restrained, and they may dissipate, conceal, or transfer out of the district court's jurisdiction assets that may be subject to disgorgement. (*See* ECF No. 42). The district court also ordered LaForte and McElhone to file sworn accountings. (*Id*. at 17).

After a two-day evidentiary hearing, LaForte and McElhone consented to the entry of a preliminary injunction and asset freeze. (*See* ECF Nos. 221-1, 336-1).

### *The Receivership-Expansion Order*

The district court subsequently entered several orders to expand the scope of the receivership over additional Receivership Entities, properties and assets. (*See*,

*e.g.*, ECF Nos. 436, 517). The Receivership-Expansion Order, which brought the L.M.E. 2017 Family Trust and other entities under the Receiver's control, is one such ruling.[7]

When requesting entry of the Receivership-Expansion Order, the Receiver provided the district court with ample evidence that the L.M.E. 2017 Family Trust and additional entities, properties, and assets that LaForte and McElhone owned could be attributable to commingled funds derived from harmed investors. (*See* ECF No. 357). Among other items, the Receiver submitted to the district court (1) five sworn declarations, (2) transcripts of deposition testimony, (3) McElhone's personal financial statement (which reflected her claimed ownership of several of the additional Receivership Entities), (4) accounting records showing the transfer of funds between Par Funding and the proposed additional Receivership Entities, and (5) an email evidencing that at least one of the Receivership Entities persisted in attempting to collect money owed to proposed additional Receivership Entities even

---

[7] The additional Receivership Entities that are the subject of the Receivership-Expansion Order are: (1) Capital Source 2000, Inc.; (2) Fast Advance Funding LLC; (3) Beta Abigail, LLC; (4) New Field Ventures, LLC; (5) Heritage Business Consulting, Inc.; (6) Eagle Six Consulting, Inc.; (7) 20 N. 3rd St. Ltd; (8) 118 Olive PA LLC; (9) 135-137 N. 3rd St. LLC; (10) 205 B Arch St. Management LLC; (11) 242 S. 21st St. LLC; (12) 300 Market St. LLC; (13) 627–629 E. Girard LLC; (14) 715 Sansom St. LLC; (15) 803 S. 4th St. LLC; (16) 861 N. 3rd St. LLC; (17) 915–917 S. 11th LLC; (18) 1250 N. 25th St. LLC; (19) 1427 Melon St. LLC; (20) 1530 Christian St. LLC; (21) 1635 East Passyunk LLC; (22) 1932 Spruce St. LLC; (23) 4633 Walnut St. LLC; (24) 1223 N. 25th St. LLC; and (25) Liberty 8th Ave. LLC.

after the Receiver was appointed. (*See generally* ECF Nos. 357-1 through 357-12). In all, the evidence demonstrated that the proposed additional Receivership Entities received more than $100 million in commingled funds traceable to the proceeds of the fraud scheme at the center of the SEC's complaint. (ECF No. 357 at 7–20).

The district court recognized that expanding the receivership to encompass these other entities was an "extraordinary equitable remedy" that was justified in this case, because "there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of [the expanded] receivership outweigh the burdens on" LaForte and McElhone. (ECF No. 436 at 2 (quotations and citations omitted)). Although the district court did not "take this decision lightly[,] . . . having reviewed the Receiver's findings—as well as [LaForte and McElhone's] conduct to date," the district court found a "clear necessity for expansion given that tainted funds, which could be the subject of disgorgement," may be found within these additional Receivership Entities. (*Id.*).

*The Consent Judgments on Liability Against LaForte and McElhone*

On the eve of trial in late 2021, LaForte and McElhone reached an agreement with the SEC to stipulate as to liability. With the consent of LaForte and McElhone, the district court entered judgments against them on liability and permanently enjoined them from violating federal securities laws. (*See* ECF Nos. 1008, 1010).

The Consent Judgments[8] provided that, "in connection with the Commission's motion for disgorgement or a civil penalty, and at any hearing held on such motion," the SEC's factual allegations were to be accepted and deemed true. (ECF Nos. 1008 at 3, 1010 at 3). In addition, by voluntarily agreeing to the entry of the Consent Judgments, LaForte and McElhone expressly "waived findings of fact and conclusions of law [and] any right to appeal [there]from . . . ." (ECF Nos. 1008 at 1, 1010 at 1).

### *The Final Judgment*

As LaForte and McElhone acknowledged, "[t]he purpose of the settlement" referenced in the Consent Judgments "was to dispense with liability issues and proceed on the issues of disgorgement and the penalties sought by the SEC" at the final judgment stage. (ECF No. 1224 at 2). Accordingly, in moving for the entry of final judgments against LaForte and McElhone (*see* ECF No. 1252), the SEC advised the district court that LaForte and McElhone "consented to permanent injunctions" by stipulating to the Consent Judgments, and the SEC asked the court to order LaForte and McElhone pay "monetary relief to the Receivership . . . for eventual distribution by the Receiver to investors." (*Id*. at 2).

---

[8] The "Consent Judgments" are, collectively, the Judgment of Permanent Injunction and Other Relief Against Defendant Joseph W. LaForte (ECF No. 1010) and the Judgment of Permanent Injunction and Other Relief Against Defendant Lisa McElhone (ECF No. 1008).

After the issues of disgorgement and civil penalties were fully briefed, the district court entered a Final Judgment, which required LaForte and McElhone to pay disgorgement, prejudgment interest, and civil penalties. (ECF No. 1433). Following certain arguments from LaForte and McElhone about how the disgorgement amount was calculated, the district court entered an Amended Final Judgment, which reduced the disgorgement amount and addressed the issues LaForte and McElhone requested the district court to reconsider. (ECF No. 1449).

### *The First Appeal of the Receivership-Expansion Order*

After the district court entered the Receivership-Expansion Order, LaForte and McElhone—individually and purportedly on behalf of the L.M.E. 2017 Family Trust—filed an interlocutory appeal of the Receivership-Expansion Order. (ECF No. 466). In this first appeal, as in this appeal *sub judice,* LaForte and McElhone argued they were not afforded an adequate opportunity to be heard before the district court entered the Receivership-Expansion Order. *See SEC v. Complete Bus. Sols. Grp., Inc.,* 44 F.4th 1326, 1330 (11th Cir. 2022). The Court found it lacked jurisdiction over LaForte and McElhone's challenge to the Receivership-Expansion Order under Sections 1291 or 1292(a), and that allowing an interlocutory appeal would contravene the Court's policy against piecemeal appeals. *Id.* at 1331–32 (discussing 28 U.S.C. §§ 1291, 1292(a)(2)). As a result, the Court dismissed the appeal. *Id.* at 1334.

9

*Prior Proceedings in This Appeal*

LaForte and McElhone filed this appeal from the Final Judgment and "all orders that merge into" it, specifically including the Receivership-Expansion Order. (*See* ECF No. 1492). The Court asked the parties to brief whether that order was final or otherwise appealable. (Doc. 21). The Receiver's position was that the Receivership-Expansion Order was appealable. (Doc. 23 at 2). The Receiver explained, "given that the purpose of the Receivership-Expansion Order was 'to effectively safeguard assets for the benefit of investors in this matter and to guard against potential dissipation' of 'tainted funds, which could be the subject of disgorgement,'" the Receivership-Expansion Order could reasonably be described as producing (or as "merged into") the Final Judgment. (*Id.* at 2–3 (quoting ECF No. 436 at 2)).

The Court decided that "[t]he remaining issue of whether the [Receivership-Expansion Order] is appealable[9] is carried with the case. A final determination regarding that jurisdictional issue will be made by the panel to whom this case is submitted after briefing on the merits is completed."[10] (Doc. 27 at 2 (emphasis

---

[9] As discussed above, the Court previously determined the Receivership-Expansion Order was non-final and, thus, not appealable on an interlocutory basis. *See SEC v. Complete Bus. Sols. Grp., Inc.*, 44 F.4th at 1332–34.

[10] The Court advised that the parties are permitted—but not required—"to discuss th[at] jurisdictional issue" in their respective briefs on the merits, "as they deem necessary or appropriate." (Doc. 27 at 2).

removed)).

### B.    Statement of Facts

For nearly a decade, LaForte and McElhone, through their company, Par Funding,  "raised nearly half a billion dollars from an estimated 1,200 investors" by advancing funds, known as "merchant cash advances," to various businesses in need of capital. (ECF No. 119 ¶ 1). McElhone was Par Funding's president, chief executive officer, and sole employee; she had ultimate decision-making authority over Par Funding and was a signatory for its bank accounts. (*Id*. ¶ 16). Nevertheless, LaForte acted as Par Fundings' *de facto* chief executive officer, and conducted its day-to-day operations. (*Id*. ¶ 17). The L.M.E. 2017 Family Trust owned Par Funding. (*Id*. ¶ 11). McElhone is the grantor of that trust, and McElhone and LaForte were the trust's beneficiaries. (*Id*. ¶¶ 11, 36).

To fund its merchant cash advances, Par Funding offered and sold securities (in the form of promissory notes) to investors. (*Id*. ¶ 48). The notes purportedly generated returns through the payments the merchants made on their merchant cash advances. (*Id*. ¶¶ 50, 53–55). As such, the profitability of the notes depended on the merchants repaying the advances to Par Funding, rather than defaulting. (*Id*. ¶ 154).

In raising funds from investors, however, LaForte and Par Funding's sales agents misrepresented Par Funding's underwriting process, the quality of Par Funding's portfolio, and the success and profitability of the merchant cash advances

11

it offered. (*See generally Id*. at 15-48). LaForte made false claims to prospective investors, including that Par Funding's default rate on its advances was 1%. (*Id*. ¶¶ 185–89). In truth, Par Funding's default rate was as high as 10%, and Par Funding filed more than 2,000 collections lawsuits against merchants who defaulted on their merchant cash advance agreements; through those lawsuits, Par Funding sought to recover more than $300 million. (*Id*. ¶ 194).

In addition, Appellants caused Par Funding to divert funds it raised from investors to themselves, the trust, and other companies that they and their families, friends, and associates owned. (*Id*. ¶¶ 239–43). In the district court action, the Receiver demonstrated that Par Funding transferred more than $100 million to Heritage Business Consulting, Eagle Six Consultants, and the L.M.E. 2017 Family Trust—entities that were owned or controlled, personally, by McElhone and LaForte. (*See* ECF No. 357). The Receiver also demonstrated that McElhone and LaForte used tens of millions of dollars they received from Par Funding to purchase luxury homes and other properties for their own personal benefit. (*Id.*).

## STANDARDS OF REVIEW

A district court has "broad equitable power" in "supervising an equitable receivership." *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010) . As a result, "appellate scrutiny is narrow" and the district court's rulings are reviewed for "abuse of discretion." *Id*. at 332. This broad discretion applies to initial orders

12

appointing a receiver, *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998), and orders expanding a receivership, *United States v. Stonehill*, 83 F.3d 1156, 1159 (9th Cir. 1996). Similarly, a district court's denial of a request for an evidentiary hearing is reviewed for abuse of discretion. *See SEC v. Mut. Benefits Corp.*, 810 F. App'x 770, 776 (11th Cir. 2020).

On appeal, questions of law are reviewed *de novo* and questions of fact are reviewed for clear error. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 572 U.S. 559, 563 (2014).

## SUMMARY OF THE ARGUMENT

This appeal of the Final Judgment against LaForte and McElhone and the Receivership-Expansion Order should be dismissed for at least three reasons. First, before the district court entered the Final Judgment, LaForte and McElhone agreed to Consent Judgments against them wherein they stipulated to liability, agreed to be permanently enjoined from violating federal securities laws, and agreed to pay disgorgement of their ill-gotten gains, prejudgment interest, and a civil penalty. They also waived findings of fact, conclusions of law, and the right to appeal. As such, LaForte and McElhone are barred from appealing the Receivership-Expansion Order, which merged into the subsequent judgments to which LaForte and McElhone later consented and waived their rights to appeal.

Second, even if the Court finds LaForte and McElhone have standing to bring

this appeal, the Court should nevertheless find that the district court provided sufficient due process to LaForte and McElhone before entering the Receivership-Expansion Order. The district court was permitted to expand the receivership at the request of the Receiver without permitting them to take discovery from the Receiver, or conducting an evidentiary hearing; the district court was merely required to determine that the Receiver showed that the assets proposed for inclusion in the receivership could be subject to an order of disgorgement and were at risk of potential dissipation.

Given the low evidentiary burden necessary for the district court to find that the receivership should be expanded, LaForte's due process arguments are unpersuasive. Moreover, LaForte and McElhone never sought any discovery relating to the merits of the Receivership-Expansion Motion, or even indicated what discovery they would have wanted to pursue or have examined at an evidentiary hearing. On appeal, LaForte and McElhone failed to demonstrate any substantive injury resulting from the district court's purported procedural deficiencies. They acknowledge that later received full access to the Receivership Entities' books and records, and they retained their own expert witness to rebut the Receiver's findings and the SEC's allegations.

The district court held that the Receiver had demonstrated LaForte, McElhone, and their co-defendants were engaging in fraudulent conduct, violating

federal securities laws, and utilizing commingled investor funds to enrich themselves, and the court entered the Receivership-Expansion Order based on those findings and its belief that the existing asset freeze would not sufficiently safeguard property that may be subject to a disgorgement order. The district court did not require additional discovery from the Receiver or an evidentiary hearing to make its findings, and it did not deprive LaForte and McElhone of due process by entering the Receivership-Expansion Order without permitting them to take superfluous discovery or present oral argument pertaining thereto at an evidentiary hearing.

Third, and finally, LaForte and McElhone took no steps to challenge the initial appointment of the Receiver in the below proceedings, or to seek reconsideration, termination, or a stay (pending this appeal) of the Receivership-Expansion Order. Now that the Final Judgment has been entered, if the Receivership-Expansion Order was reversed, it would be impractical (and unwise) to return control over the assets at issue in the Receivership-Expansion Order to LaForte and McElhone.

## **ARGUMENT**

For the following reasons, the Court should dismiss the appeal.

### A.    LaForte and McElhone waived any right to appeal the Receivership-Expansion Order.

In the Consent Judgments, LaForte and McElhone stipulated to liability, agreed to be permanently enjoined from violating federal securities laws, and agreed to "pay disgorgement of ill-gotten gains, prejudgment interest on disgorgement, and

15

a civil penalty" in amounts to be determined by the district court. (ECF Nos. 1008, 1010). In addition, they "waived findings of fact and conclusions of law" and the "right to appeal" from the Consent Judgments against them. (*Id*.).

The waiver of the right to appeal in the Consent Judgments is not unusual. Indeed, "[a]s a general rule, a party has no standing to appeal an order or judgment to which he consented." *Hofmann v. De Marchena Kaluche & Asociados*, 657 F.3d 1184, 1187 (11th Cir. 2011), *quoted by SEC v. Complete Bus. Sols. Grp., Inc.,* No. 22-13811, 2023 WL 4196949, at *1 (11th Cir. June 27, 2023) (hereafter, the "*Cole Appeal*") (affirming final judgment against LaForte and McElhone's co-defendant who similarly consented to a judgment against him). Pursuant to this Court's own precedent, the Court should hold that the appellate waiver in the Consent Judgments bar LaForte and McElhone from bringing this appeal.

LaForte and McElhone are barred from appealing the Receivership-Expansion Order and all other interlocutory orders previously entered by the district court. In this Circuit, it is a "well-established principle that *all* interlocutory orders are merged into the final judgment" for purposes of appeal. *Shores v. Sklar,* 885 F.2d 760, 763 (11th Cir. 1989) (en banc) (emphasis added) (citing *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541 (1949)), *cert. denied,* 493 U.S. 1045 (1990); *see also Rensel v. Centra Tech, Inc.,* 2 F.4th 1359, 1370 n.6 (11th Cir. 2021) ("[T]he interlocutory orders denying class certification merged into the final judgment . . .

16

."). Thus, where an "appellant's consent to an entry of judgment [is] given without reservation of a right to appeal," this Court generally dismisses an appeal of all prior interlocutory orders. *Shores,* 885 F.2d at 762; *see also Cole Appeal,* 2023 WL 4196949, at *1 ("We need not reach the merits of [whether the district court erred in entering a non-final order] because Cole consented to judgment as to liability and waived any appeal from the entry of the judgment.").

Here, LaForte and McElhone could have reserved the right to appeal the Receivership-Expansion Order as part of their Consent Judgments, but they failed to do so. *See Dorse v. Armstrong World Indus., Inc.,* 798 F.2d 1372, 1375 (11th Cir. 1986) (appellate review of a consent judgment is appropriate if the stipulated judgment expressly states that the defendant intends to appeal and reserves the right to do so), *cited by Clark v. Hous. Auth. of City of Alma,* 971 F.2d 723, 726 (11th Cir. 1992) (a party who consents to a judgment waives his right to appeal unless he did not actually consent or the court lacked subject matter jurisdiction to enter the judgment (discussing *White v. C.I.R.*, 776 F.2d 976 (11th Cir. 1985))). Consequently, LaForte and McElhone cannot now seek review of an interlocutory order that was entered before LaForte and McElhone stipulated to liability, and which merged into the Consent Judgments, for which they waived their rights to appeal. The Court should thus dismiss the appeal of the Receivership-Expansion Order.

**B.** **The district court did not deprive LaForte and McElhone of due process by entering the Receivership-Expansion Order.**

In the unlikely event the Court finds LaForte and McElhone are not barred by the Consent Judgments from appealing the Receivership-Expansion Order, the Court should nevertheless find that the district court did not deprive LaForte and McElhone of due process by entering the Receivership-Expansion Order.

*Receiverships and Due Process, Generally*

Courts generally appoint receivers in the early stages of litigation, and often do so through entry of an *ex parte* order. *See CFTC v. Fingerhut,* No. 1:20-cv-21887, 2020 WL 2747448, at *2 (S.D. Fla. May 26, 2020). To that end, there is no general right to discovery before a receiver is appointed or a receivership is expanded. Rather, in many actions, "the appointment of a receiver is sought at the commencement thereof." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 242 (5th Cir. 1997). In these circumstances, "the form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Id.* (citations and quotations omitted).

Because district courts typically appoint receivers during the earliest stages of a case, they have broad discretion to decide when discovery would be appropriate. *See id.* (a receiver may be appointed "on the basis of the moving papers and such answers, affidavits in opposition, or counter-affidavits as may be offered, and also on the testimony of witnesses in open court *if the court deems such a hearing*

18

*advisable*") (citations and quotations omitted) (emphasis added).

LaForte and McElhone essentially ask this Court to narrow that discretion by holding that a district court commits reversible error by denying a defendant an opportunity to take discovery from a receiver before expanding the scope of a receivership to include property in which the defendants have an interest. (*See, e.g.,* Doc. 37 at 26). There would be no basis for such a ruling, and LaForte and McElhone's purported property interests are irrelevant to whether the district court properly modified the scope of the receivership. A court-appointed receiver "is but a mere custodian of property and title remains in the owner." *United States v. Beaver*, 252 F.2d 486, 488 (3d Cir. 1958). As a result, the expansion of a receivership does not constitute a seizure of property that is subject to due process considerations. *See First Fed. Sav. Bank & Tr. v. Ryan*, 927 F.2d 1345, 1358 (6th Cir. 1991) (procedural due process not implicated by appointment of conservator or receiver)

For example, the Receivership-Expansion Order merely placed "custody, control, and possession" of all property held by the L.M.E. 2017 Family Trust and additional Receivership Entities with the Receiver. (ECF Nos. 141 ¶ 7(B), 436 ¶ 4 ("The Receivership Order shall apply with equal force and effect to the entities, properties, and Relief Defendant listed in paragraphs 1 through 3 above as it applies to the other Receivership Entities.")). Stated differently, the Receivership-Expansion Order did not divest the Additional Receivership Entities (or LaForte and McElhone)

19

of title to this property. As a result, the Expansion Order is not the "equivalent to seizure of . . . property by the government" and, therefore, the district court's ruling is not subject to due process considerations. *First Fed.,* 927 F.2d at 1358.[11]

Even if they could establish that due process considerations apply to the expansion of a receivership, LaForte and McElhone's argument ignores settled law holding that due process is a "flexible concept," *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1410 (5th Cir. 1987), that "calls for such procedural protections as the situation demands," *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). For example, a district court is permitted "to initiate the seizure of property without notice or a hearing" to secure an "important governmental or general public interest" or if there is a "special need for very prompt action." *First Fed.,* 927 F.2d at 1358 (citing *Fuentes v. Shevin*, 407 U.S. 67, 91 (1972)). In such circumstances, "the person initiating the seizure is a government official responsible for determining 'that it was necessary and justified in the particular instance.'" *First Fed.*, 927 F.2d at 1358 (quoting *Fuentes*, 407 U.S. at 91).

The Receivership-Expansion Order satisfied each of these criteria. First, the expansion was necessary to protect the public welfare—especially those who invested with Par Funding and its subsidiaries—because, as the evidence

---

[11] *Cf. SEC v. Torchia,* 922 F.3d 1307, 1311 (11th Cir. 2019) (considering due process arguments regarding receiver's *final adjudication* of investors' claims through summary proceedings); *SEC v. Elliot,* 953 F.2d 1560 (11th Cir. 1992) (same).

demonstrated, LaForte, McElhone, and their co-defendants were engaging in fraudulent conduct, violating federal securities laws, and utilizing commingled investor funds to enrich themselves. (ECF No. 436 at 2 (concluding that "tainted funds, which could be the subject of disgorgement, may be found in the entities and properties identified herein.")). It is "hardly conceivable" that a district court would allow "those who were enjoined from fraudulent misconduct to continue in control of [corporate assets] for the benefit of those shown to have been defrauded." *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981) (citing *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963)).

Second, the Receivership-Expansion Order was warranted to prevent potential waste or diversion. *See First Fin. Group,* 645 F.2d at 438 ("[I]t is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme and for whose benefit, in some measure, the SEC injunctive action was brought."). Indeed, the district court believed that the Receivership-Expansion Order was "necessary to effectively safeguard assets for the benefit of investors in this matter and to guard against potential dissipation." (*Id*.). In addition, the district court found that the "existing asset freeze" would not "sufficiently safeguard the property at issue in this Motion, thereby necessitating the requested expansion." (*Id*. at 3).

Third, the Receiver is an officer of the district court and that court's appointee, *see Elliot,* 953 F.2d at 1577, and the Receiver sought the relief provided by the Receivership-Expansion Order. The Receiver's request was subject to approval by the district court, which determined that the expansion was "necessary and justified in the particular instance" after an independent review of the Receiver's legal and evidentiary basis for the requested expansion. *Woods*, 826 F.2d at 1410.

Finally, LaForte and McElhone took no steps to challenge the initial appointment of the Receiver, or to seek reconsideration or termination of the Receivership-Expansion Order in the district court. LaForte and McElhone also took no steps to request a stay of the Receivership-Expansion Order pending either their prior appeal thereof or this appeal. Now that the Final Judgment has been entered, and even if the Receivership-Expansion Order was reversed, it would be impractical (if not impossible)—not to mention imprudent—to put these assets back into LaForte and McElhone's control.

### *Discovery*

As to their purported right to conduct discovery, LaForte and McElhone complain that the Receiver had not produced any documents in response to a discovery request for the books and records of their business, Par Funding, before the Receivership-Expansion Order was entered. (Doc. 37 at 39). They argue that their inability to obtain such "necessary data" rendered them unable to "effectively

refute the Receiver's claim" that certain properties and assets should be within the receivership. (*Id.*)

However, LaForte and McElhone never sought any discovery relating to the merits of the Receivership-Expansion Motion. In fact, they never even indicated what discovery they would have wanted to pursue. Rather, at the time the Receiver sought to expand the receivership to include the L.M.E. 2017 Family Trust and additional entities owned or controlled by LaForte and McElhone, the only pending discovery request was from McElhone to Par Funding (care of the Receiver, who was in control of that company's books and records). The Receiver responded to that discovery request prior to filing the Receivership-Expansion Motion. (*See* ECF No. 445 at 57:19 – 58:3). In that discovery response, the Receiver agreed to produce the requested documents, but only after the defendants agreed to the terms of a confidentiality order. (*See id.* at 39:20-40:10, 42:22-43:7, 44:21-45:19).

When the Receiver sought to expand the receivership, the district court had already determined that LaForte and McElhone "may dissipate, conceal, or transfer from the jurisdiction of this Court assets [that] could be subject to an Order of Disgorgement." (ECF No. 414 at 9-10). And that concern was particularly heightened at the time of the Receiver's motion because the court had recently determined that several defendants violated the order establishing the receivership "by setting up a new company, copying CBSG's entire QuickBooks database, and

downloading over 100,000 pages of electronic documents from a cloud-based system that were the sole property of the Receivership Estate." (*Id*. (summarizing the ensuing emergency injunction order and evidence suggesting receivership property was at risk)).

In addition, the district court previously determined that the SEC had presented a prima facie case of securities laws violations by LaForte, McElhone, and others, and that it was reasonably likely they would harm the investing public unless immediately restrained. (*Id*. at 2). The court also previously determined that injunctions against LaForte and McElhone were supported by good cause. (*Id.*). Indeed, LaForte and McElhone *consented* to the preliminary injunctions against them. (*Id.* (citing injunction orders)).

The court conducted a similar analysis to determine whether expansion of the receivership was justified and appropriate. One factor the court considered was whether the Receiver had a valid claim to expand the receivership. (ECF No. 436 at 2 n.2 (citing *Can. Life Assur. Co. v. LaPeter,* 563 F.3d 837, 844 (9th Cir. 2009))). The court also assessed whether the assets were in imminent danger of being squandered or diminished. (*Id*.). In addition, the court considered whether LaForte and McElhone engaged in fraudulent conduct, or whether there was the possibility they had done so. (*Id.*).

The court ultimately found "that the Receiver has made a sufficient and proper

24

showing in support of the relief requested," and "expansion of the Receivership is necessary to effectively safeguard assets for the benefit of investors in this matter and to guard against potential dissipation." (*Id.*) (citing *SEC v. Quiros,* 966 F.3d 1195, 1199 (11th Cir. 2020) ("A district court has 'broad powers and wide discretion to determine relief in an equity receivership.'" (quoting *Elliott,* 953 F.2d at 1566))).

Now, on appeal, LaForte and McElhone argue that the Receivership-Expansion Order "stripped [them] of possessory rights in their residences and deprived them of control over tens of millions of dollars in assets" without first providing them with "elementary procedural protections including discovery of the documents underlying the Receiver's claims and an adversarial hearing on disputed issues of fact." (Doc. 37 at 36, *adopted by* Doc. 36 at 38).

LaForte and McElhone did not squarely raise these concerns in the court below. Rather, in their joint response to the Receiver's status report, LaForte and McElhone merely stated (in the introduction to their argument) that "the Court should permit discovery and an evidentiary record from a hearing" before ruling on the Receivership-Expansion Motion, and then included a footnote with a generic request for an "opportunity to obtain discovery" on the Receivership-Expansion Motion. (ECF No. 401 at 13 n.12). Without any explanation of the specific discovery LaForte and McElhone desired to obtain, the legal justification for requiring that discovery, or how that discovery may have impacted the district court's

consideration of the Receivership-Expansion Motion, LaForte and McElhone did not preserve this issue for appeal. *See NLRB v. Gaylord Chem. Co.*, *LLC*, 824 F.3d 1318, 1333 (11th Cir. 2016) ("A party must make more than a 'passing reference[]' to an issue to preserve it for review."); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014); *In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir. 1990).

In addition, the district court directly responded to LaForte and McElhone's concern about the "purported lack of access to that data," which they apparently felt was "[a] major issue that prevent[ed] them from essentially conducting their own report or own audit" of Par Fundings' finances. (ECF No. 445 at 13:17–23). But LaForte and McElhone's concerns were unfounded then, as they are today. As the district court explained, the data "has been an issue of protective orders," "the subject of disputes in front of [the] magistrate judge" and a "show cause [order] for civil contempt sanctions against two individuals involved in this lawsuit," including McElhone, who unlawfully accessed this data without the Receiver's consent. (*Id.* at 35:15–23). Given the extensive proceedings relating to the defendants' improper data intrusion efforts, and the multiple opportunities LaForte and McElhone were provided to address the issue, it would not be reasonable to conclude that LaForte and McElhone were deprived of due process by the court below in this respect.

Regardless, the district court was not required to assess purported disputes in

26

evidence or make detailed findings of fact based on evidence before entering the Receivership-Expansion Order. To the contrary, the district court was merely required to determine that the Receiver made a sufficient showing that the properties and assets proposed for inclusion in the receivership "could be subject to an [o]rder of [d]isgorgement." *CFTC v. S. Tr. Metals, Inc.,* 391 F. Supp. 3d 1167, 1171 (S.D. Fla. 2019). This lax evidentiary standard enables a district court to focus "not on the [d]efendants' culpability"—which is an ultimate determination to be made at the conclusion of the liability phase of the case—but, rather, "on the necessity of preventing or mitigating [the defendants'] unjust enrichment by permitting fraudulent transfers to be sheltered in their homestead" and other property. *In re Lee,* 574 B.R. 286, 293 (Bankr. M.D. Fla. 2017), *distinguished by* Receiver (ECF No. 414 at 3 n.3).

In addition, the district court was not required to determine that the properties and assets that the Receiver sought to include within the receivership were exclusively derived from illegitimate proceeds. In fact, even at the factually intensive disgorgement stage subsequent to a finding of liability, courts need only base their findings on a "reasonable approximation" of the defendant's ill-gotten gains. *SEC v. Monterosso,* 756 F.3d 1326, 1337 (11th Cir. 2014). "Exactitude is not a requirement." *Id.* at 1337. And, as this Court and the Supreme Court have recognized, in some cases, "certain tracing rules should be suspended." *Elliott,* 953

F.2d at 1570 (citing *Cunningham v. Brown,* 265 U.S. 1, 12 (1924)), *quoted by SEC v. Drucker,* 318 F. Supp. 2d 1205, 1206 (N.D. Ga. 2004) ("courts typically approve *either* a pro rata distribution *or* tracing of assets to specific investors") (emphasis added). As a result, a district court may treat *any* showing that tainted and legitimate funds had been commingled as "enough to warrant treating *all* funds as tainted." (App. 718 (quoting *SEC v. Byers,* 637 F. Supp. 2d 166, 177 (S.D.N.Y. 1998) (emphasis added) (discussing Eleventh Circuit cases))).

In sum, the Receivership-Expansion Order is not an order of disgorgement, and the district court was not required to decide whether and how much of the properties and assets pertinent to the Receivership-Expansion Order should be disgorged before expanding the receivership to include them therein. The purpose of expanding the receivership over these additional entities was to preserve them and prevent any possible dissipation of assets. Given the low evidentiary burden necessary for the district court to find that the receivership should be expanded, LaForte's due process arguments are unpersuasive.

LaForte and McElhone also argue that if the district court would have permitted them to access Par Funding's accounting data, they "could have debunked the commingling theory, trac[ed] each disbursement they received to profits from the company's legitimate [merchant cash advance] business[,] . . . illustrate[d] the flaws in [an expert's] methodology, [and] demonstrate[ed] that the consultant's

truncated analysis of 'net cash' failed to provide visibility into the company's profitability." (Doc. 37 at 45). However, even if LaForte and McElhone had obtained that data and presented this information in the different manners suggested above, the district court was not required to consider those items before expanding the receivership and would not have committed error in disregarding them, so long as the court ultimately determined that the properties and assets "could be" the subject of disgorgement.

Moreover, Southern District of Florida Local Rule 26.1(g) makes clear that "[a]ll disputes related to discovery shall be presented to the Court . . . within 30 days from the . . . original due date . . . of the response or objection to the discovery request that is the subject of the dispute." S.D. Fla. L.R. 26.1(g)(1). "Failure to present a dispute to the Court within that timeframe, absent a showing of good cause for the delay, may constitute a waiver of the relief sought . . ." *Id*.; *see also Deluca v. Ceres Terminals Inc.*, No. 14-cv-24706, 2016 WL 7626197, at *1 (S.D. Fla. June 3, 2016) (denying motion to compel pursuant to Local Rule 26.1(g)(1) based on delay in presenting the issue to the court).

LaForte and McElhone did not even attempt to confer with the Receiver over any potential discovery dispute until more than 30 days after the Receiver served his responses to the discovery request. And LaForte and McElhone did not raise any potential discovery disputes to the district court until nearly seven weeks after the

Receiver served his discovery responses. Under these circumstances, LaForte and McElhone themselves caused any purported delay they encountered in receiving the documents they now suggest they needed to oppose these expansion efforts.

Given that LaForte and McElhone relegated this issue in the district court proceedings to a single sentence in a footnote—without any explanation, authority, or analysis—they cannot show that the district court erred by failing to allow them to obtain additional discovery before entering the Receivership-Expansion Order.

### *Evidentiary Hearing*

Finally, LaForte and McElhone argue that they were entitled to an evidentiary hearing before the district court entered the Receivership-Expansion Order. Although the district court did not schedule an evidentiary hearing, it *did* conduct a status conference prior to entering the Receivership-Expansion Order, wherein the court discussed the then-pending Receivership-Expansion Motion. (*See* ECF No. 445). During the status conference—which LaForte and McElhone's counsel attended (*see id*. at 2)—the court again explained that an evidentiary hearing would not be necessary for the court to determine whether to expand the receivership:

> The time will come for oral argument when necessary and when the Court deems it to be fruitful and important for the Court to render a decision. But today really is all about getting a better sense of our recovery efforts on behalf of investors and . . . asking the receiver a question or two about the expansion that has been requested.

(*Id*. at 9:23–10:8). The district court's lack of need for an evidentiary hearing should

not have been surprising—after all, the parties had fully briefed the issue. (*See* ECF No. 414).

LaForte and McElhone also complain that they never had an opportunity to rebut the disputed contents of" the Receiver's financial advisor's report. (ECF No. 431). But that report was filed *after* the Receiver moved to expand the receivership, and it isn't mentioned in the Receiver's briefing or relied on at all in the district court's Receivership-Expansion Order. (*Compare* ECF No. 414 *with* ECF No. 426, *and* ECF No. 426-1). The fact that the district court acknowledged the Receiver's financial advisor's report at a status conference, prior to entering the Receivership-Expansion Order, is irrelevant to this appeal. Indeed, as the district court stated, the status conference's purpose was to "provide the Court an opportunity to discuss the progress of the Receiver's collection efforts and ongoing management of the Receivership Entities—not to entertain oral argument regarding the disputed contents of" the Receiver's financial advisor's report. (ECF No. 436).

In sum, at no point did LaForte and McElhone offer anything other than purely legal argument in opposition to the Receiver's motion to expand the receivership. Because the district court determined that the Receiver presented sufficient evidence (none of which was controverted in LaForte and McElhone's joint response) to support the Receivership-Expansion Order, no evidentiary hearing was required.

Regardless, LaForte and McElhone failed to demonstrate "any substantive

injury" resulting from the purported procedural errors identified in their brief. *See United States v. Bartle*, 159 F. App'x 723, 725 (7th Cir. 2005) (holding that even if there was insufficient notice of appointment of receiver, the defendant could not demonstrate resulting injury). LaForte and McElhone acknowledge that they later received full access to Par Funding's books and records, and retained their own expert, who provided a different opinion on the financial picture of Par Funding's operations. (*See* ECF Nos. 1322, 1329 at 8, 11-12)). Even then, LaForte and McElhone took no action to seek emergency relief from, or to modify or vacate, the Receivership-Expansion Order.

Rather, armed with their competing expert's opinion, McElhone and LaForte decided to consent to liability and agreed that the factual allegations in the SEC's Complaint were to be accepted and deemed true for the purpose of the district court's assessment of disgorgement, prejudgment interest, and civil penalties against them. (ECF Nos. 1008 at 5, 1010 at 5). In other words, LaForte and McElhone consented to the very judgments for which the district court previously determined it would be prudent to safeguard additional properties and assets. Thus, the district court's decision to bring those additional entities and assets within the protection of the receivership further underscores the fact that any purported procedural error was harmless because LaForte and McElhone "cannot show any substantive injury." *Id.* at 725. Under the circumstances, reversal would not be warranted.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should dismiss the portion of this appeal

through which LaForte and McElhone attempt to appeal the Receivership-Expansion

Order or, in the alternative, affirm the Receivership-Expansion Order.

Dated: September 12, 2023              Respectfully submitted,

**STUMPHAUZER KOLAYA**
**NADLER & SLOMAN, PLLC**
Two South Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Telephone:   (305) 614-1400
Facsimile:   (305) 614-1425

By: *<u>/s/ Timothy A. Kolaya</u>*
Timothy A. Kolaya (Fla. Bar No. 056140)
Amy M. Bowers (Fla. Bar No. 105755)
Email: tkolaya@sknlaw.com
          abowers@sknlaw.com

*Counsel for Appellee Ryan K. Stumphauzer,*
*as Court-Appointed Receiver*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this document complies with the length limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 7,708 words.

This document complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft Word for Microsoft 365 in Times New Roman, 14-point font.

By: */s/ Timothy A. Kolaya*
Timothy A. Kolaya

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 12, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF. I further certify that paper copies are being sent to the Clerk's office.

By: */s/ Timothy A. Kolaya*
Timothy A. Kolaya